BAILEY, Administrator, v. CITIZENS RAILWAY COMPANY, Appellant.

| 152 | 449 |
| 97a | 1612 |

In Banc, December 5, 1899.*

1. **Negligence:** GRIPMAN: CROSSING: ANOTHER'S TORT: CONCURRENT NEGLIGENCE: PLAINTIFF'S OWN NEGLIGENCE. A street railway, of which plaintiff was conductor, crossed defendant's track at an angle of about twenty-three degrees, and plaintiff was injured as a result of the deflection of the grip-bar of his car into the grip-slot or groove of the defendant's track, which was being repaired at the time by defendant. *Held*, that, without proof of negligence by defendant or some of its employees, the defendant was not liable for the independent negligence of the gripman on plaintiff's car. A railroad company is not liable for injuries due solely to the tort of one over whom it had no control. However, if defendant negligently made such displacement of the groove rails as would have caused the deflection, even though the gripman on the other road's car ran his car at a negligent speed, then the concurring negligence of the gripman would constitute no defense to the conductor's right to recover against the defendant road. But, if by the rules of the company the gripman acted under the conductor's directions and the speed of the train was under his control, and the concurrent negligence of the gripman in running the train too fast contributed to the injury, the conductor could not recover, because in such case the gripman's negligence became the conductor's own contributory negligence.

2. ———: REPAIRING CROSSING: CARE. A street railway company in repairing its track, where it crosses that of another, is required to exercise only ordinary care.

3. ———: PRESUMPTIONS. Instructions should not indulge in presumptions of negligence, when the facts are known or admitted or are testified to by witnesses.

4. ———: ———: NOT TO BE INVOKED. Where a conductor on one street railway knows that the track of another which crosses his line is being repaired it can not be presumed that the repairing company negligently caused the injury of the conductor, solely because the repairing was entirely under the care of the defendant, and an accident happened to the conductor there.

NOTE.—Decided July 14, 1899. Motion for rehearing filed; denied December 5, 1899.

5. ———: EXCLUSIVE KNOWLEDGE: PRESUMPTION. Where in such case the plaintiff admits that he had knowledge of the condition of the crossing, it is error to instruct the jury that the law presumes that it was defendant's negligence that caused the accident if they find that the condition of the crossing was exclusively within the knowledge of defendant.

*Appeal.from St. Charles Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

SMITH P. GALT for appellant.

(1) The court erred in giving plaintiff's instruction number 1. First. It placed the burden of proof on defendant, when it was on the plaintiff. The general rule that negligence on the part of defendant must be alleged and proven, is fundamental. Fuchs v. St. Louis, 133 Mo. 198; Chapman v. Street Ry., 114 Mo. 542; Goode v. St. Louis,. 113 Mo. 257; Ellerbe v. Berney, 119 Mo. 632; Johnson Co. v. Wood, 84 Mo. 489; McCullock v. Holmes, 111 Mo. 445; Thornton v. Royce, 56 Mo. App. 179; Beatie v. Rocky Branch Coal Co., 56 Mo. App. 221; Kenney v. Railroad, 105 Mo. 270; Glover v. Henderson, 120 Mo. 367; Bunker v. Hibler, 49 Mo. App. 536; Norton v. Paxton, 110 Mo. 456; Maddox v. Maddox, 114 Mo. 35. Second. It was a palpable violation of the rule of legal presumption and of logical conclusion, to tell the jury that "the law presumes that said accident happened, and said collision of the grip bar of plaintiff's train on account of the displaced slot of the St. Louis Cable & Western Railway Company was caused by the negligence, or want of ordinary care, on the part of defendant's workmen or employees." (2) The court erred in giving plaintiff's instruction number 5. (a) It takes away any hope for defendant, in this, that it tells the jury that if the defendant has proved, "to the satisfaction of the jury," that the gripman of plaintiff's train was guilty of negligence in running or "attempting" to run over said cros-

Bailey v. Citizens R'y Co.

ing at "an improper or reckless rate·of speed," and that "such rate of speed caused the displacement of said slot," nevertheless "plaintiff can recover, unless the gripman was at the time acting under or subject to the direction and control of plaintiff as to such rate of speed." A defendant charged with negligence can disprove negligence in two ways; first, by showing that he or it used all ordinary care, and, secondly, by showing that the accident was not caused by his or its act at all, but by the independent act, negligent or otherwise, of a third party, not connected with the defendant at all. Either is a complete defense, because it proves the defendant not guilty. Therefore, in this case it mattered not whether the gripman was subject to plaintiff's control or not, if he caused the accident. (b) It makes the defendant an insurer of the plaintiff against the negligence of his own gripman, if he was not acting under the direction and control of the plaintiff as to his rate of speed.

DANIEL DILLON and GEORGE W. BAILEY for respondent.

(1) The independent negligence of the gripman was not relied upon or contemplated at the trial as constituting a defense to this action. The effort of defendant, exclusively, was to connect plaintiff's negligence with his injury. (a) "When the defendant pleads the negligence of a party other than the plaintiff in bar of the action it must appear, not only that such third person was in fault, but that the plaintiff ought to be charged with that fault." Beach on Contrib. Neg., sec. 100. (b) The adoption of the theory of contributory negligence necessarily admits the negligence of the defendant. Beach on Contrib. Neg., sec. 64. (2) When a plaintiff is thrown off his guard and acts upon a reasonable supposition of safety induced by a defendant, in a way and to an extent which, but for the defendant's inducement, might be imputed to plaintiff as negligence sufficient to prevent a recovery there is no

contributory negligence.   McGee v. Railroad, 92 Mo. 219;
Beach on Contrib. Neg., secs. 65, 67, 68, 102; Benjamin v.
Railroad, 133 Mo. 291.   (3)   Contributory negligence is an
affirmative defense and to be rendered available must be
pleaded.   Young v. Iron Co., 103 Mo. 324; Lane v. Railroad,
132 Mo. 18.   (4)   The elements necessary to constitute an
independent intervening cause, as an excuse for defendant's
negligence, are not in this case.   Lowery v. Railroad, 99 N.
Y. 158; Pollett v. Long, 56 N. Y. 200; Koelsch v. Phia Co.,
152 Pa. St. 355; 2 Thompson on Negligence, p. 1088;
1 Sharman & Redfield on Negligence, sec. 29; Bishop on Non-
contract Law, sec. 528.

GANTT, C. J.—Action for damages growing out of
personal injuries.

The petition alleges that the defendant is and at the times
mentioned was a corporation by virtue of the laws of Missouri
and used and operated a certain street railway and crossing
along Easton and Franklin avenues.   That the St. Louis
Cable & Western railway used at said times a certain railway
which was crossed by defendant's railway at or near the junc-
tion of Easton and Franklin avenues in St. Louis.   That on
the twenty-sixth day of August, 1889, the plaintiff was con-
ductor of one of the cable cars of the St. Louis Cable & West-
ern railway going west at the junction of said tracks.   That
as the grip car, which was drawing the car on which plaintiff
was conductor, was passing said crossing the grip of said car ran
against the slot, thereby throwing plaintiff against a seat of
the car on which he was conductor, and dislocated his right
shoulder and otherwise bruised and injured plaintiff.

And plaintiff avers that said grip was caused so to run
against said slot and injure the plaintiff by the negligence of
defendant's servants in that they displaced the slot of the St.
Louis Cable & Western railway so as to obstruct the passage
of the grip attached to the grip car of plaintiff's train.   That

defendant by its servants was at said time engaged in repair-
ing said crossing and negligently and carelessly displaced the
slot of the St. Louis Cable & Western railway track so as to
obstruct the passage of the grip on said track, and defendant's
said servants also negligently failed to give any notice to the
persons in charge of the St. Louis Cable & Western cars of
the fact of such obstruction. Whereby said grip was cause l
to strike against the side of said slot and injure plaintiff as
aforesaid: That by his injury so sustained plaintiff has suf-
fered and will suffer great pain of body and mind, has been
permanently disabled from labor and crippled for life, has in-
curred large expense for medicines, medical attention and
nursing and is damaged in the sum of $10,000 for which sum
he prays judgment.

The answer is a general denial and a plea of contributory
negligence by plaintiff and those operating his train with him.

Reply, general denial.

The testimony on the part of the plaintiff tended to es-
tablish that the crossing of the St. Louis Cable & Western
railway and the Citizens railway, at Twenty-eighth street and
Franklin avenue, commonly called the Sheridan Exchange,
in the city of St. Louis, had become out of repair by reason of
the jarring of the trains of both of said railways over it and
as a consequence a vibration of the tracks ensued when trains
passed over said crossing. It became necessary to repair said
crossing, and for two weeks prior to August 26, 1889, the de-
fendant company had been engaged in putting in a new cross-
ing at said junction. To do this it was necessary that the
crossing should be dug out underneath the tracks and heavy
timbers put under to prop the tracks, and this had been done,
and the work was progressing when the plaintiff's train was
wrecked on said crossing.

Plaintiff, as he alleges, was a conductor at that time on
the train of the St. Louis Cable & Western railway and had been
so employed for a long time prior thereto. His train con-

sisted of a grip car and a trailer.   James V. Aiken was his gripman.

Among the printed rules of the St. Louis Cable & Western railway for the government of its employees which were furnished to plaintiff and all other employees were these:

"5.   Charge of car.   They" (conductors) " will have *charge* of their cars while on duty, will start from the stand when directed by the starter and positively avoid all 'laying' or 'running' while upon the route."

"39.   Conductors and gripmen will use every possible precaution to avoid accidents."

"17.   Cross chains.   Conductors must keep cross-chains on both ends of the grip-car securely hooked."

"19.   Speed.   They will keep on time as nearly as possible and *see* that their gripman *properly performs* his duties; that they run their cars slowly around all curves and *across all railroad tracks which intersect the route of this railway* . . . The maximum rate of speed between . . . Garrison avenue and Vandeventer must be 8 miles per hour."

In addition to the general directions a special notice was given to all the conductors and gripmen of the St. Louis Cable & Western railway that their trains must be run very slowly over this particular crossing while these repairs were being made, and there was evidence that the workmen of defendant in charge of the repairs had on several occasions, indeed on the forenoon of the day of the accident, warned Aiken, the gripman, that he must run slowly over this crossing, and that he had replied he must make his time.   The evidence tended also to prove that it was within the power of the gripman to regulate the speed of the train from "just barely moving, up to 8 miles an hour."   Notwithstanding these printed rules and plaintiff's evidence on the first trial that he had charge of the train, he testified on the last trial that he had no control of the speed of his train.

The evidence also tended to prove without contradiction that up to the time of the accident and while these repairs were going on, for two weeks, the trains had proceeded safely over this crossing; that plaintiff's own train had made on the day of the accident five trips over this crossing. About noon of that day as the plaintiff's train was going west, it approached this crossing and stopped one hundred or one hundred and fifty feet east of it to let one of the Cable & Western cars from the west come across, and when it had crossed, his train started up at about three and one-half or four miles an hour, and at that speed ran upon the crossing and came to a sudden stop, by which plaintiff, who was on the rear platform of the trailer, was thrown forwards with such violence that he fell against the back of the hind seat, which leaned towards him at a small angle, and which back seat was constructed of hickory or ash or other hard tough wood six inches broad and one inch thick, and broke said board into two pieces, and dislocated plaintiff's arm at the shoulder. Investigation disclosed that the grip was pressing against the side of the slot rail, right at the crossing of the slots of the track of the Cable & Western with the Citizens railway and that the force had been so great that his grip, which was of steel three-eighths of an inch thick and eighteen inches long, was all bent up, and to get it out it had to be cut out with chisels. There was also evidence that the train was running at full speed of the rope, or eight miles an hour.

These grip-bars on both roads run in a slot or passage way between two parallel rails, and at this crossing the cable or rope of defendant's road passes beneath that of the Western, and when defendant's cars approach the crossing the grip is released and the cars are propelled over the crossing by the momentum obtained.

On this occasion it seems clear that the slot rails of the Cable & Western had been deflected, so that the grip bar of the grip car drawing the plaintiff's car struck the corner

caused by the intersection, and was thus diverted into the slot of the Citizen's road, and of course produced a sudden stop. This slot or passage on the Cable & Western road was five-eighths of an inch in diameter and the grip was three-eighths of an inch thick, leaving only one-eighth of an inch on either side of the grip between it and the sides of the slot or the slot rails.

There was testimony tending to prove that the jars of a train passing rapidly over this crossing would cause a vibration that might throw this slot rail out of line, and if the corner of the intersection was thrown more than one-eighth of an inch out of line the grip bar would strike it and produce such a wreck as occurred on this occasion.

The contention of the defendant was and is that in making the repairs it adopted all reasonable precautions and means to prevent the displacement of the slot rails, and that the displacement was caused by the rapid speed of plaintiff's car, against which its servants had protested, whereas plaintiff insists it was produced by the rapid running of defendant's own cars over the crossing and the unsecure methods adopted by defendant in making the repairs, and its negligence in not noticing the displacement before plaintiff's train went on the crossing and notifying plaintiff's gripman thereof.

The work of repairing was under the immediate supervision of Jacob Volk, the master mechanic of the defendant's railway. He testified that the Cable & Western crossed the Citizens road at this crossing at an angle of about twenty-three degrees, in order to accommodate the roads to the angle at which the streets crossed each other. He testified that the work required the closest care; that the jolting and vibration was apt to dislodge or displace the slot rail and cause an accident. He had left the work about ten minutes before this accident happened, to go to dinner. He left Leonhart in charge of the workmen and gave them all directions as to the work. There was no other superintendent there. Leonhart had

worked on steam railroads twenty-four years; three years in machine shops and mechanical work on locomotives.

The weight of the trains on the two roads was about equal. Plaintiff's train started over the crossing just after a train of the Cable & Western had come east and a train on the Citizens had crossed.

No witness saw that the slot rail was displaced before the accident.

I. The court upon these facts instructed the jury among other instructions as follows:

"5. The court instructs the jury that even if it should appear in evidence to the satisfaction of the jury that there was negligence on the part of the gripman of plaintiff's train in attempting to move his train of cars over said crossing at an improper or reckless rate of speed, and that such rate of speed caused or contributed to the displacement of said slot, yet the court instructs the jury that the finding of such facts—if the jury should find such facts from the evidence—would not, and could not, under the law, prevent plaintiff from recovering in this case, unless the jury further find from the evidence that said gripman was at the time acting under or subject to the direction and control of plaintiff as to such rate of speed."

It will be observed that under this instruction the jury were told that the defendant would be liable to plaintiff even though they found the fact to be that it was the negligence of the gripman of the train on which plaintiff was conductor which caused the displacement of the slot rail and thereby the injury to plaintiff, unmixed with any negligence by the defendant or its employees, unless they further found said gripman was under or subject to the direction and control of plaintiff. In other words without proof of negligence by defendant or any of its employees it was liable for the independent negligence of the gripman over whom it had no control and to whom it did not bear the relation of master in any degree.

To hold a defendant liable for a pure tort of one over whom it had no control; to make it liable for the negligent or mischievous act of a stranger, as the gripman of plaintiff's car was to defendant, would be to violate every principle of natural justice and finds no support in our laws. The law makes each man liable for the consequences of his own negligent or wrongful act but does not attempt to hold him for the misconduct of another over whose acts he has no control or unless his negligence concurs with that other in causing damage. [Wright v. Railroad, L. R. 8 Exc. 137.]

It must be borne in mind that there was ample evidence that this crossing could be and had been used with safety by both railroad companies for two weeks while undergoing these repairs; that there was much evidence that fast running over it was calculated to loosen the bolts which held the slot rail in position; and that the conductor and gripman had been specially notified, not only by their superior and superintendent to run slowly over the crossing, but the workmen engaged in this reconstruction testified to having notified Aiken that he must run slower over the crossing, and he admitted this on the witness stand, but he answered he must make time. Now in view of all this testimony, and the further fact that it required only the deflection of one-fourth of an inch to put the intersection corner of the slot rail out of line and throw it in the path of the grip-car, can it be said that it was not a question of fact which defendant had a right to have submitted to the jury that it was the *sole* negligence of the gripman (Aiken) which produced the injury? And if it was that, defendant was not liable. It seems too plain for discussion that this must be true, and yet this is just what the fifth instruction denied defendant. Nor is it a sound proposition of law that this independent tort of the plaintiff's gripman would not exonerate defendant unless the gripman was under the control or direction of plaintiff. Being the act of one over whom de-

fendant had no power whatever, defendant was not liable for his negligence or torts.

The counsel for plaintiff argue, however, that this fifth instruction pre-supposed that the jury would find defendant's negligence, which would entitle plaintiff to recover, in which event this subsequent negligence of the gripman would be at most but a contribution to defendant's negligence. If this was the purpose of counsel for defendant and the circuit court, they were most unhappy in drawing the instruction. That instruction contains no intimation that if the jury find the defendant had first been guilty of negligence which would produce the displacement or was guilty of negligence directly contributing thereto, then the concurring negligence would constitute no defense. Such a modification would have been a correct statement of the law, but we find no such principle announced in the instruction. On the contrary it was sufficient in and of itself to have compelled a verdict for the plaintiff even though the act of plaintiff's gripman alone had been the sole cause of the injury.

But the proviso of the instruction should not have been added for the reason that the plain, printed rules of the company, particularly rule 19, confided the speed of plaintiff's train to him, and he was required to see that the gripman properly performed his duty, and ran his train slowly around all curves and across all railroad tracks which intersected his route. With this rule in evidence and his own sworn admission that he had charge of the train and that the gripman had to obey his orders, there was no room to question "that the gripman was at the time acting under and subject to the directions and control of the plaintiff."

Two defenses were open to defendant under its answer. If it could establish (as much of the evidence tended to prove) that the gripman was under the control of plaintiff and that plaintiff directed the rapid running and this caused the displacement of the slot rail, it was clear plaintiff could not

recover because his own negligence had directly contributed to the act which produced his injury, or if it was not able to establish that the gripman was under the control of plaintiff, still defendant was not liable if the jury found that the rapid running of plaintiff's train was the sole cause of the displacement of the slot rail. .

As the plaintiff's fifth instruction wholly deprived defendant of the benefit of this defense and virtually directed a verdict for plaintiff, even though the jury found the sole cause of the breakdown was the negligent rapid running of this car by plaintiff's gripman, we think manifest error was committed against defendant, for which the judgment must be reversed.

We can not agree with learned counsel that this was a harmless instruction and the verdict so obviously for the right party and for the right amount that this error should be condoned and the judgment affirmed.

In this case the defendant was only required to exercise ordinary care, that is such care as a reasonably prudent person would have exercised under the same circumstances. The necessity had risen for repairing this crossing.

The evidence of Mr. Shipley, the superintendent of the Cable & Western road, was that he visited this work two or three times a day to note the character of the work. He testified that it was being done in the usual and customary manner. He says further: "At the time of this accident the work of excavation and taking out the concrete had been completed and the tracks were braced up by timbers that had been bolted together. They were bolted, as I say, in my visits to them; I would go for the purpose of seeing that everything was safe for our trains, and I considered it was done as well as it could be done." Knowing that while these repairs were going on the cars should be run slowly over this crossing he gave both written and verbal instructions that his cars should be run slowly and carefully over the works. So long as care

was observed in running, for two weeks at least, the work proved to be safe and no accident occurred.

Can this court or could the circuit court then, as a matter of law, say that because the slot rail did become deflected so as to cause a collision with the grip bar, that this in and of itself raised a presumption of negligence which the defendant was bound to disprove? We think not. The burden of the case was on plaintiff to establish negligence, and not one entirely of presumptions.

This court has on more than one occasion condemned the practice of instructing juries as to presumptions of negligence when all the facts are in evidence, especially where the defense, as in this case, is one of contributory negligence.

When the facts are known and admitted or are testified to by witnesses, then it is the province of the jury to pass on their legal effect under proper instructions. There is no occasion for indulging presumptions. [Lynch v. Street Ry., 112 Mo. loc. cit. 433; Moberly v. Railroad, 98 Mo. 183; Rapp v. Railroad, 106 Mo. 423.]

It is urged that because the work was entirely under the care of defendant, that because an accident happened, the presumption arose of its negligence, but we think this doctrine ought not to be applied here for the reason that while it is true defendant had charge of the work, it was well known to the operatives of the Cable & Western line that it was repairing, and that in order not to stop traffic altogether the conductors and gripmen of that road must go over the junction very carefully. In the very nature of things it was almost impossible to keep the repairs going and yet be as absolutely safe as it would be when they were completed. Certain risks are inevitable in making repairs of this nature and if those charged with notice of the conditions will disregard the common dictates of prudence and are hurt they must bear the consequences. This is not a case where defendant is called upon to answer to one of its passengers for the highest degree of

care.   It is on the contrary a case where there was a joint right of user of this junction, and the servant of the company exercising the right of crossing is suing, and a different principle of law governs the relations of the parties.   The defendant was liable for its negligence, but that was a question of fact to be determined in the light of all the evidence and not to be presumed.   The doctrine of *res ipsa loquitur* under this combined use of this crossing ought not to be applied.   The conditions required care of all parties using this crossing while the repairs were going on, and such were the positive orders to plaintiff and the gripman, and it was a question of fact to be determined by the jury, not one of assumption that either was negligent.   If defendant by its negligent manner of making the repairs caused the misplacement or could by the exercise of ordinary care have discovered it in time to notify plaintiff, and his gripman, of the displacement and failed to do so, it was liable.   On the other hand if the jury found that the rapid running of plaintiff's train displaced the slot rail and caused the accident after the repeated warnings to run carefully and slowly, then defendant was not liable but the injury was the result of the negligence of plaintiff or his gripman, for which the law gives no redress.

Plaintiff invokes the doctrine that the negligence of a carrier is not to be imputed to a passenger when the carrier's negligence causes or contributes to the injury of the passenger. Such unquestionably is the rule of decision in this State.   The doctrine of Thorogood v. Bryan, 8 M. G. & S. 114, that a passenger is so identified with his carrier as to be chargeable with his negligence has been repudiated by this court in Becke v. Railroad, 102 Mo. 544, as it has been by the English courts.

But the fifth instruction finds no support in Becke v. Railroad, 102 Mo. 544.   That case announced the rule that a passenger on the vehicle of a common carrier who is injured by the concurrent negligence of the driver and a third person is not precluded from recovering against the latter because of

the concurring negligence of the driver, but instruction number 5 would change that rule so as to allow a recovery against the third person who was guilty of no negligence whatever simply because the driver was negligent. It did not require the jury to find the concurrent negligence of the defendant, or of its employees.

While it is true that the repairs were under the exclusive control of and were being made by defendant, still they were repairs, and the gripman of plaintiff's car was not at liberty to run over them "at an improper and reckless rate of speed," as announced in the instruction. After the notice which plaintiff and his gripman had of the conditions existing and had been warned to run slow, the law required at least that a reasonable rate of speed would be observed by them and that they would not disregard all the laws of prudence.

II.    The fourth instruction for plaintiff was as follows:

"The court instructs the jury that if it appear in evidence to the satisfaction of the jury that the work and repairs at the crossing of the said street railways were being made and conducted by the workmen or employees of defendant under ground, and in such a manner that the safe, or unsafe, condition of such construction, or the manner in which the work was being done by defendant's workmen, was not susceptible of being observed by plaintiff or his gripman, and that the safe or unsafe condition of such crossing, and the manner in which said work was being done, was exclusively within the knowledge of defendant's workmen, and exclusively under the management and control of the defendant's workmen, and exclusively under the management and control of defendant's employees, and that the accident was one not liable to happen except from want of ordinary care, and the slot rail of the St. Louis Cable & Western railway was displaced, then the court instructs the jury that the law presumes that said accident happened, and said collision of the grip bar of plaintiff's train on account of the displaced slot of the St. Louis Cable & West-

ern Railway Company was caused, by the negligence, or want of ordinary care, on the part of defendant's workmen or employees; and if the jury find the herein supposed facts from the evidence, then the burden of proof rests upon the defendant to rebut such presumption of negligence, and to prove by a preponderance of evidence satisfactorily to the jury that said accident happened and that plaintiff's injuries were sustained from some cause other than the negligence of defendant's employees, failing in which the verdict under the law, must be for the plaintiff."

This instruction was erroneous in leaving to the jury to find that the unsafe condition of the crossing was exclusively within the knowledge of defendant's-workmen.

On the contrary both plaintiff and the gripman testified that the superintendent of the St. Louis & Western Railway, Mr. Shipley, had given them verbal notice to run very slowly over this crossing, and plaintiff testified that it was necessary to run slowly over this crossing because defendant's workmen "were working there, it was all undermined," and "it was dangerous to go fast." The gripman testified that the workmen that morning had come to his car and told him he must run slowly over it.

In view of all this evidence from the plaintiff and his gripman how could the court predicate the instruction in part upon their ignorance of the danger.

Moreover there was much evidence that owing to the construction of the slots they were liable to be misplaced pending the repairs by rapid moving. It was at least a controverted fact that the misplacement was caused by defendant's servants, and combining the character of the work with the proof that rapid running of cars over it would produce a displacement of the slot bar, it was error for the court to declare that it was a presumption of law that it was defendant's negligence that caused the displacement. There was evidence from which the jury could have found that the negli-

gence of the gripman on plaintiff's car caused it and in such a case a trial court has no right to throw the weight of such a presumption against a defendant.

The use of the doctrine of exclusive management and control of the repairs would be all right if a passenger of defendant had been suing and no outside agency, such as the uncontrolled and reckless running of plaintiff's gripman, had intervened.

While it may have been and probably was true that the accident was one not liable to happen except from the want of ordinary care, this want of ordinary care, to render defendant liable, should have been confined to defendant and its servants, and not made to apply to the want of care of plaintiff's gripman.

The learned court seems to have ignored the necessary limitations of the doctrine upon which its instruction was based. We submit that when an independent factor or agency is introduced into the otherwise exclusive management of a work like this, and its action is uncontrolled by the defendant and its negligence is also liable to cause a disarrangement of defendant's plans or interfere with the safety of the work, then the presumption growing out of the exclusive management of the work no longer obtains, but it is a question of fact to be resolved in the light of all the circumstances.

As defendant's repairs were liable to be misplaced by the rapid running of plaintiff's train and the force with which the grip bar was driven into the slot was cogent evidence of considerable speed, we think the court erred in charging that the law presumed it was caused by defendant's negligence, but should have left the fact to be found by the jury from the evidence before them. If they found it was caused by the inattention or want of care of defendant's servants, then defendant should have been held liable unless they further found that plaintiff had charge of the train and could have controlled

Vol. 152 mo—30

State ex rel. v. Aloe.

the speed of the train and knew the danger and either directed
the rapid crossing or permitted it when he should have pre-
vented it, in which event his own contributory negligence
would bar his recovery.

There are many other exceptions but they either are
repetitions of or corollaries to these which we have discussed.
No further discussion is necessary to indicate our views.

It follows that the judgment must be reversed and the
cause remanded for the errors noted, and it is so ordered.
BURGESS, BRACE and MARSHALL, JJ., concur; VALLIANT, J., in
holding the fifth instruction erroneous because it does not
require the jury to find the concurrent negligence of defend-
ant, but expresses no opinion as to the fourth instruction;
ROBINSON, J., dissents; SHERWOOD, J., absent.