ADA PROFIT, by Her Next Friend, Respondent, v. CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, January 6, 1902.

1. **Negligence: CONTRIBUTORY NEGLIGENCE.**  Contributory negligence can only arise where the defendant himself has been guilty of such culpable negligence as renders him liable unless he can show that the injured party voluntarily put himself in the way of injury.

2. ———: **IMPUTABLE NEGLIGENCE: AGENCY: IDENTITY.**  Imputable negligence is placed generally on the ground that the party guilty of contributory negligence is the agent of the injured party or the injured party is so identified with the guilty party as to be responsible for his acts, as though both were one person.

3. ———: ———: **PARENT AND CHILD: IDENTITY.**  Child and parent are not identical in body nor yet in property rights, since money arising from injury of the child is the child's own property. Authorities reviewed.

Vol 91 app—24

4. ———: ———: ———: ———. In Missouri the rule of imputing the negligence of a parent to the infant child does not prevail. The child is a separate entity and its injuries is its disability and the compensation therefor is its money and not the parent's.

5. CONTRIBUTORY NEGLIGENCE: INFANT: CAUSAL CONNEC-TION. In an action for injury at a railroad crossing the verdict showed the defendant guilty of negligence. The infant plaintiff was incapable of contributory negligence, and since the father's negligence could not be imputed to the infant, the only remaining question was the causal connection between the negligence and the injury.

6. ———: CAUSAL CONNECTION: INSTRUCTIONS. In an action for injuries to an infant at a railroad crossing, where the defendant failed to give statutory signals, instructions directing a peremptory finding for the defendant if the father merely knew of the approaching train were properly refused since the jury should be allowed to say whether the omitted signals, if given, would have changed the father's conduct.

7. ———: RAILROAD CROSSING: SOUNDING WHISTLE: IN-STRUCTION. An instruction that if the whistle was sounded at a point eighty rods from the crossing and the defendant heard the same, it was not necessary to sound the whistle again, is in the face of the statute and takes from the jury the question whether repeated signals would not have alarmed the plaintiff.

Appeal from Buchanan Circuit Court.—*Hon. W. K. James,* Judge.

AFFIRMED.

*James C. Davis* for appellant.

(1) It is the duty of a father to watch over a child and guard it from danger and provide for its safety and welfare, and it is the duty of the child to submit to the government and control of its father. The child is entitled to the benefit of the father's superintendence and protection, and is consequently subject to any disadvantages resulting from the exer-

cise of that parental control and authority which it is both the right and duty of the father to exert. Appellant was, therefore, entitled to go to the jury upon the question as to whether or not there was any negligence upon the part of the father such as contributed to produce respondent's injuries. Stillson v. Railway, 67 Mo. 671; Lamsen v. Gas. Co., 46 Barb. 264; Railroad v. Stratton, 78 Ill. 88; Carter v. Towne, 98 Mass. 567; Carter v. Towne, 103 Mass. 507; Morrison v. Railway, 56 N. Y. 302. (2) The statute, in requiring the bell to be rung on a locomotive, approaching a crossing, continuously from a point eighty rods from such crossing, or the steam whistle thereon to be sounded at such point and to continue to be sounded at intervals, until such crossing shall be passed, is designed and intended to give warning to travelers on the public highways of the approach of trains to crossings formed by the intersection of public roads and railroad tracks, but if a traveler on a public highway has knowledge of the approach of a train to a given crossing independent of the sounding of the whistle, or the ringing of the bell, then it is immaterial whether the whistle was sounded or the bell rung. Having such knowledge, it becomes his duty to take every precaution for his safety, just as much as if the bell had been rung or the whistle sounded. (3) If the whistle on a locomotive, attached to a train approaching a crossing at a public highway, is sounded at a point eighty rods distant from the crossing, and the sounding of said whistle is heard by a traveler along the public highway which forms the crossing, then it unquestionably becomes the duty of the traveler to stop at some point on the public highway before he reaches the crossing at which he may cross with safety to himself. This principle of law was embodied in instruction No. 21, and yet that instruction was refused by the court.

*Nichols & Pistole* and *H. S. Kelley* for respondent.

(1) The rule is that the negligence of the driver, who is not the servant of the injured party or under his contral, can not be imputed to him. Dickson v. Railroad, 104 Mo. 504; Becke.v. Railroad, 102 Mo. 544; Hunt v. Railroad, 14 Mo. App. 160; Keitel v. Railroad, 28 Mo. App. 657; Little v. Haskett, 116 W. S. 366. (2) Nor can the negligence of the parent which may contribute to the injury of the infant child, be attributed to the child. Railway v. Kowalski, 92 Fed. 310; Robinson v. Cone, 22 Vt. 213; Warren v. Manchester Co. (N. H.), 47 R. R. Rep. 735; Railroad v. Snyder, 18 Ohio St. 399; Newman v. Railroad, 52 N. J. Law 446; Jeffersonville v. McHenry (Ind.), 53 N. E. Rep. 183; Wymore v. Mahaska County, 78 Iowa 396; Bishop Non. Cont. Law, secs. 581-583; Railroad v. Gavitt, 93 Ga. 369. The case of Stillson v. Railroad, 67 Mo. 671, and others cited by appellant to sustain the theory of the converse of the above proposition, has been overruled by Winters v. Railway, 99 Mo. 509; and Brill v. Eddy, 115 Mo. 596; Railroad v. Stratton, 78 Ill. 88, is overruled by Railroad v. Wilcox, 138 Ill. 370. (3) The third error assigned is in refusing instruction No. 21, requested by the defendant. This instruction would excuse the defendant from liability without having given the statutory signal; that is, if the defendant gave one whistle at the whistling post and did not sound the whistle at intervals the defendant is not liable, provided the driver heard it and failed to stop his team, but continued to drive along the public highway. Under the facts assumed in this instruction both the company and the driver were negligent, and their concurring negligence caused the collision, but inasmuch as the negligence of the driver was not imputable to the plaintiff, her right to recover was not destroyed.

ELLISON, J.—This is an action for personal injury in which the plaintiff recovered judgment in the trial court. The injury was the result of an accident at a railroad crossing on

a public road in Buchanan county. Plaintiff is an infant and at the time of the accident was about sixteen months old. Her father and mother with plaintiff and two other daughters, aged fourteen and sixteen years, respectively, were traveling in a two-horse wagon along the public road approaching the railroad tracks; the plaintiff was in her mother's lap. One of defendant's trains going at a rapid rate of speed, collided with the wagon as the father was attempting to cross over with the family. Plaintiff by one of those singular happenings in sad disasters, escaped with her life, while her father, mother and two sisters were instantly killed. She was, however, seriously injured and there is no complaint made by defendant as to the amount of the verdict.

The principal question in the case is, conceding the father to have been guilty of contributory negligence, whether such negligence is imputable to the plaintiff. The trial court took the view that the father's negligence could not affect the plaintiff's right. The courts of the country have not been of uniform opinion concerning the rule of imputable negligence from father to infant child who is without discretion, especially where the child is so young as to be altogether helpless and thus *entirely* in the care, custody and protection of the parent.

In coming to a correct and just conclusion on the question it should be borne in mind that contributory negligence can only arise, or become important, where the defendant is a guilty party; that is to say, where the defendant has himself been guilty of such culpable negligence as will render him liable to make redress unless he can excuse his guilty act by showing that the injured party voluntarily put himself in the way of the injury. In other words, the defendant does an act which is condemned by the law and for the doing of which the law affords redress to all those injured thereby, save those who by their own carelessness have placed themselves in such position that but for such act of theirs the wrong committed by defendant would not have resulted in an injury to them.

In this case the defendant does not, and of course could not, seek to be relieved from its negligence on account of any act of plaintiff, she being a helpless babe. But defendant asks that the negligent conduct of the father be attributed to the child by force of law.

The rule of imputable negligence is generally placed on two grounds: one, that the party guilty of the contributory negligence was the agent of the injured party; and the other that the injured party was so identified with the party guilty of contributory negligence as to be responsible for his acts as though they were one person. In case of those capable of appointing a representative there is legal room, when the facts warrant, to apply the rule of agency. But how a helpless child without discretion could be a principal and appoint an agent, no one has yet pointed out. So of identity of the child and parent. The physical fact is that they are not identical, either in body or property rights, for the money arising from damages for an injury to the child in its action against the wrongdoer, is the child's own property. And those courts which place the reason for the rule of imputable negligence on the identity of the parties, must rely on a mere fiction. Bishop on Non-Contract Law, section 582, writing on this subject says:

"Looking into the reasoning of the law, we discover that it does not sustain this doctrine. The doctrine is a new one, brought forward long after the system of the common law, with its many principles, had become consolidated. And, in this system, unlike some former systems wherein the child was treated substantially as the father's chattel, having few or no rights separately its own, the minor, from the first drawing of the infantile breath, is invested with all those rights of an adult which can give him anything, and protected simply by such disabilities as can protect, yet by none which are capable of working him harm. Now, this new doctrine of imputed negligence, whereby the minor loses his suit, not only where he

is negligent himself, but where his father, grandmother, or mother's maid is negligent, is as flatly in conflict with the established system of the common law as anything possible to be suggested. The law never took away a child's property because his father was poor or shiftless or a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it. But, by a new doctrine, after a child has suffered damages, which, confessedly, are as much his own as an estate conferred upon him by gift, and which he is entitled to obtain out of any one of several defendants who may have contributed to them, he can not have them if his father, grandmother, or mother's maid happens to be the one making a contribution."

I am much persuaded that those who maintain the rule of imputable negligence of parent or guardian unconsciously allow themselves to be possessed of the idea that an innocent party is sought to be punished for the rashness and carelessness of another having complete and entire control of the injured person. But, as has already been stated, the party doing the injury is *not* innocent. Such party, by negligence, is *guilty of the first wrong.* The rule of imputing negligence of parent or guardian to infant children has been denied by the ablest text-writers; among others, Wharton on Negligence, section 313, and Beach on Contributory Negligence, sections 127-130. And by adjudications in many States. Robinson v. Cone, 22 Vermont 213; Railroad v. Snyder, 18 Ohio St. 399; Newman v. Railroad, 52 N. J. Law 446; Atlanta v. Railway, 93 Ga. 369; Railroad v. Wilcox, 138 Ill. 370; Railway v. Kowalski, 92 Fed. 310.

Coming to the cases in this State more or less applicable to this question, we find that the rule is firmly established with us that where the husband is not acting as the agent of the wife, his negligence is not imputable to her. Dickson v. Railroad, 104 Mo. 504; Becke v. Railroad, 102 Mo. 544. And we held in Munger v. City of Sedalia, 66 Mo. App. 629, that

where the husband and wife were riding in a buggy to church, the husband driving and carelessly overturning the buggy by going onto a sand pile in the street, the husband's negligence could not be attributed to the injured wife. That the mere act of their driving together to church "involved nothing more than the social and domestic relation which existed merely because they were husband and wife. He was not under her direction or control; nor was he engaged in any matter for her whereby his act was her act."

But on the question of an infant's responsibility for the negligence of the parent, it seems that no case is reported where the father himself carried a totally helpless infant into the dangerous place. There are cases where the parents have carelessly allowed their young children to go unattended upon the streets where there were street railways; and there is a case where a father and his daughter, about eight years old, were crossing railway tracks when the daughter, some five or six feet ahead of her father, attempted to pass between standing cars at a place pointed out by him and was injured. In that case it was held that the child could not recover against the railway company. Stillson v. Railroad, 67 Mo. 671. After all said by the distinguished judge who wrote the opinion, the conclusion was that the railway company was not guilty of negligence and, of course, could not be held, however the question of imputable negligence was considered. Some years prior to that case, imputable negligence was denied where a child between two and three years old was permitted to go upon the street unattended and was thereby run over by a street car. Boland v. Railroad, 36 Mo. 484. And some years since that case, imputable negligence was denied where a child three years old, in company with a sister ten years old, was permitted by the mother to go across the street for some kindling wood, and in crossing, the former was injured by a street car. Winters v. Railroad, 99 Mo. 509. In the latter case, Stillson v. Railroad, supra, was not considered

as authority for the proposition of attributing negligence of the father to the infant child. Judge BLACK, in speaking for the court, states that that case should be considered as decided on the ground that the defendant railway company itself was not guilty of negligence.

We therefore have no hesitation in stating that the rule of imputing the negligence of the parent to the infant child does not prevail in this State. The child, however young and helpless, and however dependent upon the parent for care and protection, is nevertheless a separate entity. The damage done by the wrongful act consists in its suffering and loss, present and future. The injury is its disability and the money which the law gives in compensation for these things is its money and not that of the parent. We therefore willingly align ourselves along with those who hold that the injury which a wrongdoer inflicts upon an infant is not excused by the negligence of a third party even though it be the parent.

There was evidence tending to show that defendant was guilty of negligence in failing to give warning of the approaching train by ringing the bell or else by sounding the whistle, beginning eighty rods from the crossing where the accident happened. And as tending to prove other negligence, there was evidence of weeds being allowed to grow on defendant's right of way so as to obstruct a traveler's view of the line of railway. Since the verdict of the jury was for plaintiff, we must consider that defendant was guilty of negligence. And since the infant plaintiff could not have been guilty of contributory negligence, and, as we have already seen, could not have the negligence of its father attributed to it, the only further inquiry in the case is, was defendant's negligence the cause of the accident? For, the law is that though a railway company be negligent, such negligence must be so connected with the accident as to be its cause in order to render the company liable.

To take an extreme case for the purpose of illustration;

suppose it had been shown that plaintiff's father drove upon the track for the purpose of suicide. That would have demonstrated that defendant's negligence had no connection whatever with the accident. So, therefore, any evidence 'in the case which tended to show that plaintiff's father would have made the attempt to cross even though the statutory signals had been sounded, would entitle defendant to an instruction putting that hypothesis to the jury, for, as has been just stated, such evidence if credited, would show that plaintiff's father would have disregarded the signals and, therefore, failing to give such signals was not the cause of the accident.

But the instructions offered by defendant and refused by the court declared, peremptorily, that if the father merely knew of the approach of the train the finding must be for defendant, though no signals were given. Instructions of this character should leave room for the jury to say whether the omitted signals, if given, would have changed the other party's conduct. In the circumstances of this case, who can say that if the defendant had sounded an alarm as required by statute, the plaintiff's father would. not have stopped his team and thus avoided harm? There doubtless are cases where it would be so absolutely clear that an alarm would have been useless, that the court could properly put its instructions in a peremptory way, but this case is not one of them. This view makes. it unnecessary to discuss the action of the court in modifying the instructions just discussed and giving them as modified, for even then they were probably more than defendant was entitled to within the reason of what we have just said.

We do not think the other complaints of the action of the trial court are well founded.

The instructions for plaintiff put the case properly to the jury on plaintiff's theory. Those refused for defendant not already referred to were either improper or were covered by those given. Number 21, told the jury, in effect, that if

the defendant sounded the whistle at a point eighty rods away and plaintiff's father heard it, it was not necessary to sound it again. This was in the face of the statute and, besides, took from the jury any right to inquire whether repeated signals would have alarmed plaintiff's father. Number nine was embodied, substantially, in number twenty-five.

We are satisfied that the judgment should be affirmed. All concur.