BURLEIGH, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, May 14, 1907.

1. **STREET RAILWAYS:** Negligence: Prima Facie Case. In an action for damages on account of injuries to plaintiff received in a collision with a street car while plaintiff, a member of the fire department, was riding on a hook and ladder truck returning from a fire, the evidence is examined and held sufficient to submit to the jury the question whether the car was running at a speed in excess of the ordinance limit, and whether the defendant was negligent in failing to stop the car in time to avoid the collision.

3. ———: ———: Imputing Negligence. The general doctrine is that the negligence of the driver of a vehicle which contrib-

utes to a collision with another vehicle will not be imputed to a passenger so as to bar his action against the owner of the other vehicle for injuries suffered in the collision, unless some relation exists between the driver and the passenger enabling the passenger to control or influence the driver. One of several fireman on a hook and ladder truck under the command of a captain who had control of them all could not be charged with the negligence of the driver of the truck, where he was injured by a collision of the truck with a street car; he would not be precluded from recovery on account of the negligence of the driver provided he exercised ordinary care for his own safety.

4. **PERSONAL INJURIES:** Excessive Verdict. Where in an action for personal injuries it was shown the plaintiff's leg was broken, that he was bruised about the hip, cut about the head, the bones of his foot broken, was treated for four or five months, that the injuries to his foot and leg were probably permanent, and he paid out $215 for medical attendance, a verdict for $4,000 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

AFFIRMED.

*Morton Jourdan* and *George W. Easley* for appellant; *Boyle, Priest & Lehmann* of counsel.

(1) The demurrers to the evidence offered at the close of plaintiff's case and at the close of the entire case should have been sustained. It is undisputed that had the plaintiff looked, or had any one on the fire truck looked, the approaching car could have been seen in time to have avoided going on the track, or by hurrying across before the car struck the fire truck. Holwerson v. Railroad, 157 Mo. 216; Watson v. Railroad, 133 Mo. 250; Boyd v. Railroad, 105 Mo. 371; Sinclair v. Railroad, 133 Mo. 241; Huggert v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Railroad, 104 Mo. 35; Railroad v. Mosley, 57 Fed. 922; Kirtley v. Railroad, 65 Fed. 391; Murphy v. Railroad, 153 Mo. 262; Butts v. Railroad, 98 Mo. 272; Loring v. Railroad, 1128 Mo. 349; Kries v. Railroad, 148 Mo. 321;

Kotney v. Railroad, 151 Mo. 35; Kelsey v. Railroad, 129 Mo. 262; Lane v. Railroad, 132 Mo. 4; Scofield v. Railroad, 1114 U. S. 615; Maxey v. Railroad, 113 Mo. 1; Payne v. Railroad, 136 Mo. 562. (2) The court erred in giving the fourth instruction on behalf of plaintiff and also in refusing the sixth and seventh instructions asked by defendant. Also in refusing instructions fifteen and sixteen asked by defendant. The plaintiff was so identified and stood in such privity with the other men upon the truck as to make their negligence a defense to plaintiff's action. We are not unmindful of the opinion of this court in Baxter v. Transit Co., 103 Mo. App. 597. We respectfully insist that that case was wrongly ruled on this question. (3) The court in passing on the Baxter case hastily concluded that the case of Keitel v. Railroad, 28 Mo. App. 657, "is directly in point and settles this question." The latter case is decided solely on the ground that Thorogood v. Bryan, 8 C. B. 115, has been thoroughly overthrown both in England and America. Dickson v. Railroad, 104 Mo. 491. (4) We insist that the question requires further examination, and respectfully urge the court to examine the following authorities: Bicknell v. Railroad, 120 N. Y. 290, 24 N. E. 450; Miller v. Railroad, 128 Ind. 47, 27 N. E. 359; Donnelly v. Railroad, 109 N. Y. 16, 15 N. E. 733; Griffith v. Railroad, 44 Fed. 574; 1 Shearman and Redf. on Neg. (3 Ed.), sec. 66a, note 1; Brannon v. Railroad, 115 Ind. 115, 17 N. E. 202.

*George Safford* for respondent.

GOODE, J.—On December 29, 1903, plaintiff was injured in a collision with one of defendant's trolley cars and afterwards instituted this action for damages. The accident occurred after nightfall. Several acts of negligence on the part of the motorman of the car are averred as causes of the accident; but only three were

submitted to the jury as grounds for a verdict for plaintiff. These three were; first, that the car had been running for more than one hundred feet before reaching the point of collision at a higher speed than ten miles an hour and because of such speed the motorman was unable, by using all the appliances at hand, to check the car in time to avert a collision; second, that the motorman, after he might have discovered, by ordinary care, the danger of a collision, omitted to exercise said degree of care in using the appliances at hand to check the speed of the car in time to avoid a collision; third, that the motorman after he had discovered the danger of a collision, failed to exercise ordinary care in using the appliances at hand to avert the collision. The occurrence was at the intersection of Geyer and Ohio avenues in the city of St. Louis. Plaintiff was at the time a member of the fire department of said city and was riding on the running board of a ladder truck, returning from a fire. Five other firemen were on the truck, including Cornelius Zellers, who was the captain in command of the squad. Zellers and William Williamson were sitting side by side on the seat of the truck and Williamson was driving. The truck was proceeding southward on Ohio avenue and the horses had just crossed the south track when the car, approaching from the east and on the north track, struck the truck. Plaintiff received serious injuries, including a fracture of his right leg and the bones of his left foot. Some witnesses estimated the speed of the car at twenty-five miles an hour; others lower. There is evidence tending to show the horses drawing the truck were visible to the motorman for a distance of two hundred and fifty feet before the car reached Ohio avenue. A passenger testified to seeing the horses that distance ahead. Plaintiff was standing on the west runningboard, facing eastward and was just able to see over the truck and down Geyer avenue. He said when he first looked over the truck and saw the car

it was fifty feet away, coming at high speed and almost immediately collided with the truck. Williamson, the driver, testified that when he saw the car he was about over the north track and going over the south one; that he had no way of getting out, but had to go on across; that he first noticed the car when it was fifty feet away; that the truck was hit about the fender of the hind wheel; that he did not look east before he drove on the track because he did not hear anything coming; that the first time he looked was after the team had crossed the north track and was going over the other one. Captain Zellers gave testimony about like Williamson's. He said he was in charge of the entire crew of the truck, including the driver; that he saw the car when it was about 175 to 190 feet away and, of course, started across; that the car struck the truck before it was over the crossing; that from the outer rails of the car track to each of the curbs was about eleven feet and the distance between the two tracks and the two rails of each was about five feet; that there was nothing to obstruct the view of the car, and if the driver had stopped when it was first seen, it would have passed without doing harm. Testimony was given regarding the distance in which the car, loaded as it was, and under all the circumstances, could have been stopped when going at the different rates of speed estimated by witnesses. This testimony tended to show it could have been stopped if under either of the velocities, in time to avert a collision. According to the testimony of a physician who attended plaintiff, the outer bone of the right leg was broken, there were bruises about the hip, a cut on the head and the heel bone of the left foot—the bone which supports the body—was broken. Plaintiff was very nervous all spring. He was treated for four or five months. Said physician examined him during the week preceding the trial and found his left foot swollen and partly stiffened so as to interfere with locomotion. This doctor said he

did not think plaintiff would ever walk as freely as before the injury and that he would probably need the care of a physician in the future; that the union of the broken bones was a good one, but plaintiff could not put much pressure on the heel yet. Another physician testified that he had examined the plaintiff just before the trial and found the right limb much swollen and filled with inflammatory fluid, with evidence of a fracture about the middle third of the leg bone; that the "carpal bone" of the left leg had been injured and broken, as the witness had ascertained from the history of the case; that plaintiff's walk would necessarily always be slow and he was reasonably certain to suffer more or less pain. City ordinances were introduced to prove any speed in excess of ten miles an hour was illegal. Such is the statement of the case according to the evidence for plaintiff, given for the purpose of passing on the contention that a verdict for defendant should have been ordered. Medical testimony for defendant tended to show plaintiff's injuries were not so grave as the foregoing statement would indicate and also to disprove negligent conduct on the part of the motorman. The jury returned a verdict for plaintiff in the sum of $4,000.

There was evidence tending to prove the three acts of negligence on the part of the motorman, which the instructions permitted the jury to find—evidence that the speed of the car was much too high and prevented a timely stop after the danger to the truck became apparent, and evidence that with any proper use of the appliances at the command of the motorman, he might have stopped the car after the peril of the truck was discovered, or, by ordinary care, could have been discovered. In the face of such proof it would have been improper to direct a verdict for defendant on the ground that negligence in the operation of the car was not established prima facie. Negligence of plaintiff was pleaded in defense of the action; but certainly if he is to be held responsible only

for his own conduct, the proof that it contributed to cause the accident was far from conclusive. In the first place he was not driving, and though it was his duty to look out for his own safety in some measure, it was not incumbent on him to keep the vigilant watch for cars which was expected of the driver. Plaintiff's position was such that he had a poor chance to detect the approaching car or avoid the collision. He saw the car when it was fifty feet away by looking over the top of the truck, and at that time, if he and the other witnesses are to be believed, he could do nothing to save himself. His graphic language in describing the car's advance and his own behavior was: "I did not have time to do anything. I tried to make a get away, but it came so quick I couldn't get away. It was just coming like something opened out of some place unknown; coming right on top of you." The accident happened late in December, between eight and nine o'clock in the evening, when it was dark and plaintiff had less opportunity to see the car than he would have had in daylight. The court left it to the jury to say whether, by the exercise of ordinary prudence in looking and listening, plaintiff might have avoided the collision, advising them that if they thus found, he could not recover. If there was any testimony tending to prove plaintiff contributed to cause his own injury, there certainly was not enough to justify holding as a legal conclusion, he could not recover. The main contention at this point is, not that plaintiff was barred of recovery by his own lack of care, but by the imprudence of the driver of the truck. In other words, that if the driver was guilty of contributory negligence, said negligence, should have been imputed to plaintiff, and as the evidence proved negligence on the part of the driver, the court erred both in leaving the issue to the jury and in not directing a verdict for defendant if they found the driver contributed to the collision. This court ruled the contrary in Baxter v. Transit Co., 103 Mo. App. 597, 78

S. W. 70; but we are admonished by defendant's coun-
sel that our decision was hasty and ill-advised and that
cases from other courts disproving the old authority of
Thoroughgood v. Bryan, 6 C. B. 115, justify neither
the judgment in the Baxter case, nor the holding below
that the present plaintiff was not barred by the negli-
gence of the driver. The argument is that plaintiff and
the driver—indeed all the persons on the truck—were
engaged in the joint venture of returning the truck to
the engine house and, therefore, each was responsible for
the negligence of the others. Counsel have cited us to
no case which lends the least countenance to this propo-
sition, nor have we found one that does. The doctrine
of the courts generally is that the negligence of the driver
of a vehicle which contributes to a collision with another
vehicle, will not be imputed to a passenger so as to bar
his action against the owner of the other vehicle for in-
jury suffered in the collision, unless the relation of mas-
ter and servant existed between the driver and the pas-
senger, or some other relation enabling the passenger
to control or influence the driver. [Little v. Hackett,
116 U. S. 336, and other cases *infra*.] Plaintiff was one
of several firemen under the command of a captain,
who was on the truck and in control of them all. How
plaintiff can be said to be responsible for the driving, we
fail to see, as he had nothing to do with it. No doubt
he was responsible for his own negligence, and if he saw
the danger of a collision in time to avert it, or get out
of the way, this would be a defense; and so the court
ruled. But if plaintiff exercised ordinary care for his
own safety, he is not to be precluded from recovering
damages from defendant for its negligence contributing
to the collision, merely because the imprudence of the
driver of the truck may have contributed, too. In Dick-
son v. Railroad, 104 Mo. 491, 16 S. W. 381, a case whose
facts are not materially different from those before us,

the Supreme Court said, in passing on the charge of the lower court:

"Indeed, the court went further than the correct rule of law warrants in the limitation of plaintiff's right of recovery on the score of contributory negligence. The jury was told in the first instance that if he or the *driver of the wagon* was guilty of negligence which directly contributed to the accident, there could be no recovery. The negligence of the driver in this case, he not being in the employ or under the control of plaintiff, cannot be imputed to plaintiff. This seems to be now the settled doctrine in England and the United States. Becke v. Railroad, 102 Mo. 544; Land Co. v. Mingea, 89 Ala. 521; Borough of Carlisle v. Brisbane, 113 Pa. St. 552; Mills v. Armstrong, L. R. 13 App. Cas. 1."

It would be a waste of time to prolong the discussion of this point, which has been settled by many decisions of which we cite the following, some of them being undistinguishable in material facts, and all in principle, from the case at bar. [O'Rourke v. Railroad, 142 Mo. 342, 352, 44 S. W. 254; Bailey v. Railroad, 152 Mo. 449, 462, 52 S. W. 406; Munger v. Sedalia, 66 Mo. App. 629; Profit v. Railroad, 91 Mo. App. 369; Johnson v. Railroad, 96 Mo. App. 663, 71 S. W. 106; Railroad v. Creek, 130 Ind. 139; Little v. Hackett, 116 U. S. 366.]

It is said that in permitting a finding of negligence because the speed of the car exceeded ten miles an hour and in consequence of said high speed collided with the truck, the court went outside the scope of the petition. The petition expressly charges that the motorman failed to exercise ordinary care in running the car at a speed in excess of that rate, in violation of the city ordinances and so as to be dangerous to persons lawfully using the avenue. No foreign element was introduced into the case by the instruction on this issue.

Neither do we accept the contention that the court

erred in framing issues regarding the motorman's falling short of due care in endeavoring to stop after he might have or actually had, discovered the danger of a collision. Counsel say there is a lack of evidence to show the motorman could have stopped before striking the truck; but expert evidence of a precise and positive character was introduced on those questions.

The verdict is challenged as excessive. Plantiff proved an outlay of $215 for attendance. He was under treatment four or five months and is more or less permanently disabled. His right leg was broken, his left foot crushed so as to interfere with his movements, and he received a head wound and bruises on his thigh. We cannot hold the verdict excessive.

Some other points are made against the judgment which we have examined and found not to warrant a reversal.

The judgment is affirmed. All concur.