Becke v. The Mo. Pac. Ry. Co.

## BECKE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

1. **Passenger:** COMMON CARRIER: CONCURRING NEGLIGENCE OF DRIVER AND THIRD PERSON. A passenger on the vehicle of a common carrier, who is injured by the concurrent negligence of the driver and a third person, is not precluded from a recovery against the latter because of the concurring negligence of the driver.

2. **Negligence:** WHEN MATTER OF LAW. The court may declare it to be negligence, as a matter of law, for persons in charge of a train of cars to run it on a dark night, in a populous country and approaching a crossing near the suburbs of a city, at a rate of speed of twenty-five miles an hour without having the headlight of the locomotive lighted.

3. ———. Where reasonable minds would not differ as to the facts in evidence constituting negligence, the court may so declare them as a matter of law.

4. ———: SECOND SECTION OF DAMAGE ACT. Where one is killed at a railroad crossing by reason of the negligence of an employe of the company in failing to have the headlight burning on the locomotive, the case falls under Revised Statutes, 1879, section 2121, and the damages to be assessed are fixed at $5,000.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*Bennett Pike* for appellant.

The refusal of defendant's instructions was error. *Chapman v. Railroad,* 19 N. Y. 341–44; *Township v. King,* 84 Penn. St. 230; *Thorogood v. Bryan,* 8 C. B. 114, 129; *Armstrong v. Railroad,* L. R. 10 Exch. 47; *Lockhart v. Lichtenthaler,* 46 Penn. St. 151; *Stiles v. Geesey,* 71 Pa. St. 439; 39 Iowa, 523. The instructions

given on the court's own motion were improper and erroneous. *Stoher v. Railroad*, 91 Mo. 518; *King v. Railroad*, 11 S. W. Rep. 563; *Crumpley v. Railroad*, 11 S. W. Rep. 244.

*A. R. Taylor* for respondent.

(1) The first proposition advanced for appellant is based on the old exploded doctrine of *Thorogood v. Bryan*, 8 C. B. 114. This case has been followed in a few cases in America and England, and, after a precarious existence in criticism, has been generally repudiated. *Bennett v. Railroad*, 36 N. J. L. 225; *Hunt v. Railroad*, 14 Mo. App. 166; *Keitel v. Railroad*, 28 Mo. App. 663; *Chapman v. Railroad*, 19 N. Y. 341; *Barrett v. Railroad*, 45 N. Y. 628; Thompson on Car. 284-289. (2) As to the contention by appellant, that the court usurped the province of the jury, by declaring it negligence to run a train of cars in the night time, and dark, across a public highway without headlight, near a city, it is submitted that the cases are numerous where the court has done this. *Welsh v. Railroad*, 72 Mo. 455; *Reilly v. Railroad*, 94 Mo. 604; *Loeffler v. Railroad*, 96 Mo. 270; *Taylor v. Railroad*, 86 Mo. 462; *Barry v. Railroad*, 98 Mo. 71. (3) The instruction on the measure of damages was correct. *Crumpley v. Railroad*, 98 Mo. 38; *King v. Railroad*, 98 Mo. 239.

BRACE, J.—In this action, plaintiff sues to recover damages for the death of her husband, Charles Becke, who was a passenger in a public stage or hack, that was struck by a train of defendant, at a public crossing a short distance from Nevada, Missouri, thereby causing the said coach to be overturned and the said Becke injured so that he died within two days after the collision, from such injuries.

The plaintiff had judgment for $5,000, and the defendant appeals. The only errors urged as grounds.

for reversal are upon the instructions. They may all be considered upon instructions 1 and 3, given for plaintiff, and instruction A, refused for the defendant.

"1. If you find from the evidence that plaintiff was the wife of Charles Becke when he died; and that on January 16, 1886, said Charles Becke was a passenger on a public stage or hack going from Montevallo to Nevada, in Missouri, and had no control over the driver thereof, or of the management of said hack; and that the hack in which said Becke was then such passenger was struck on said day by an engine of defendant at the crossing of the railroad and a traveled public road near Nevada, Missouri, and not within any city, and that in consequence of said collision said Becke received injuries from which he died at Nevada, Missouri, on or about January 18, 1886; and if you further find from the evidence that said collision directly resulted from, or was caused by, the omission of defendant's employes in charge of said engine to give any of the signals mentioned in instruction, numbered 2; and that said Charles Becke, at and prior to said collision, was himself exercising ordinary care to avoid injury and danger, then your verdict should be for plaintiff, and you should assess her damages at the sum of $5,000."

"3. If you find from the evidence the facts to be as mentioned in instruction, numbered 1, except as to the omission of signals, and find on that point that one of the signals mentioned therein and more particularly described in instruction, numbered 2, was given; but if you then further find from the evidence that at the time and place of said collision it was no longer daylight, but was after dark, and that there was no headlight lit or burning on said engine, and that in consequence of said omission said collision occurred at said crossing, then your verdict should be for plaintiff, and you should then assess her damages at the sum of $5,000, that being the measure of damages fixed by the statute in this case

in the event you find for the plaintiff under these instructions and the evidence before you."

"A. The court instructs the jury that if they believe from the evidence that on the nineteenth day of January, 1886, one Hanley was driving a hack from Montevallo to Nevada, and that he had driven that hack from Nevada to Montevallo and back six days each week for one-third of the time since the first of December, 1885, and had known the road ever since the railroad was built for four or five years, and had been over it often during that time and knew said public road on which he was traveling crossed the defendant's railroad at a point from a mile to a mile and a quarter southeast of the town of Nevada, in open prairie land, where the railroad train could be seen from half a mile to a mile and a quarter before the train reached said crossing, and that said train could have been seen or heard by said Hanley for a distance of thirty rods or more before he reached the crossing if he had looked in the direction of the train, or could have been heard by him if he had listened carefully, or if it was after dark in the evening from 6:10 to 6:25 o'clock P. M., and said Hanley had stopped and carefully looked and attentively listened that he could have seen or heard the train, and that said Hanley knew it was about train time, and notwithstanding said Hanley drove his team and hack onto the railroad crossing without stopping and carefully looking and attentively listening, and plaintiff's deceased husband was injured in consequence thereof, either by the train, or by reason of the team running away, upsetting the hack and dragging deceased, or otherwise, the defendant is not liable for injury so done, and the jury should find their verdict for the defendant, whether the whistle was sounded, the bell was rung or the headlight was lit or not."

I. It is contended by counsel for the defendant that the court committed error in refusing to instruct

the jury, that the plaintiff could not recover if the driver of the hack in which her husband was a passenger was guilty of negligence which contributed to the injuries which resulted in his death, and that the doctrine laid down in *Thorogood v. Bryan*, 65 Eng. C. L. Reports, 8 M. G. & S. 114: "That a passenger upon the vehicle of a common carrier, who sustains an injury which is the result of the concurrent negligence of those in charge of such vehicle and third persons, is so identified with the former as to be chargeable with their negligence in an action against the latter and therefore only entitled to recover damages from his carrier," should govern the case. This doctrine, from the time it was first announced in *Thorogood v. Bryan*, in 1849, though afterwards followed by the English courts for a time (*Armstrong v. Railroad*, 10 L. R. Exch. 47) was continually subjected to adverse comment and criticism, until recently in the case of "*The Bernina*" (January 24, 1887 12 L. R. Prob. Div. 1887, p. 58) the whole question was re-examined and the authorities, English and American, reviewed by the court of appeals of England, and the doctrine condemned, and *Thorogood v. Bryan* and the cases that followed it cannot any longer be considered authority even in England. Lord ESCHER, M. R., thus sums up in the "*Bernina*" *case :* "After having thus laboriously inquired into the matter and having considered the case of *Thorogood v. Bryan*, we cannot see any principle upon which it can be supported, and we think that with the exception of the weighty observation of Lord BRAMWELL, though that does not seem to be a final view, the preponderance of judicial and professional opinion in England is against it, and that the weight of judicial opinion in America is also against it. We are of the opinion that the proposition maintained in it is essentially unjust and inconsistent with other recognized propositions of law. As to the propriety of dealing with it at this time in a court of appeal, it is a case which from the time of its

publication has been constantly criticised. No one can have gone into or have abstained from going into an omnibus, railroad or ship on the faith of the decision. We, therefore, think that, now that the question is for the first time before an English court of appeal the case of *Thorogood v. Bryan* must be overruled."

The doctrine of *Thorogood v. Bryan* has received the sanction of some American courts, notably in *Lockhart v. Lichtenthaler*, 46 Pa. St. 151, and others might be cited, but it has never been generally recognized or followed in this country; in fact the great weight of American authority is against it, and to this conclusion the supreme court of the United States arrived in the recent case of *Little v. Hackett*, 116 U. S. 366, after a thorough consideration of the subject and a review of the American authorities. That it is unsound in principle and against the weight of authority is amply demonstrated in the following additional cases: *Chapman v. Railroad*, 19 N. Y. 341; *Robinson v. Railroad*, 66 N. Y. 11; *Dyer v. Railroad*, 71 N. Y. 228; *Bennett v. Railroad*, 36 N. J. Law, 225; *Railroad v. Steinbrenner*, 47 N. J. Law, 161; *Trans. Co. v. Kelly*, 36 Ohio St. 86; *Street Ry. Co. v. Eadie*, 43 Ohio St. 91; *Cuddy v. Horn*, 46 Mich. 596; *Railroad v. Shacklett*, 105 Ill. 364; *Turnpike Co. v. Stewart*, 2 Met. (Ky.) 119; *Railroad v. Case's Adm'r*, 9 Bush. (Ky.) 728; *Tompkins v. Railroad*, 66 Cal. 163.

The question has never been passed upon in this court, but so far as judicial opinion upon this subject has been expressed by the court of appeals, it has been in harmony with the general current of American authority. *Hunt v. Railroad*, 14 Mo. App. 160; *Keitel v. Railroad*, 28 Mo. App. 657. The recent and exhaustive consideration which this question has received in many of the cases cited renders unnecessary any extended discussion of the principle involved. It is so plain that to maintain the doctrine would be to abrogate a well-settled rule of the common law which

gives a right of action for an injury resulting directly
from the joint wrongful act of two wrongdoers against
either or both of such wrongdoers, and that its effect
would be to make an innocent person answerable for the
wrong act of another over whom he has and exercises no
control, and who is neither his servant, nor his agent.
That argument would seem unnecessary (whatever the
authority to the contrary may have been) to show that
such a doctrine ought not to stand.    The court com-
mitted no error in refusing to instruct the jury that the
contributory negligence of the driver, if any, would
defeat plaintiff's right to recover.

II.   The error complained of in the third instruc-
tion given for plaintiff is, "that the court therein
assumes as matter of law that the failure to have the
headlight lit, or burning, at the time of the alleged col-
lision was negligence on the part of the defendant.
The uncontradicted evidence in the case was that the
collision took place at a public crossing about a mile
and a quarter south of the city of Nevada, on the
sixteenth day of January within half a mile of another
crossing south about six o'clock in the evening; that
the night was dark; that the train was a passenger
train from Joplin going north to Kansas City and was
running at about twenty-five miles an hour.   The court
submitted to the jury the question whether the head-
light was lit and burning and whether it was dark at
the time of the collision; and if it was dark and the
headlight was not lit or burning, whether the collision
occurred in consequence of the omission to have the
headlight lit and burning.   All the disputed facts were
submitted to the jury.   "The court takes judicial
notice of the power, speed and management of railroad
trains and of common experience;" "where the facts
are undisputed the question whether they amount to
negligence or not may be one of law or of fact."   Pierce
on Railroads, p. 315.

"We agree that it is the province of the jury to find the facts, and of the court to declare the law on the facts as found. In some cases the question of negligence may be determined by the court on the facts found or admitted. * * * Where from the facts found or agreed upon, the question of negligence is one about which reasonable minds may differ it should be left to the jury to make the deduction from all the circumstances to determine the ultimate fact." *Tabler v. Railroad*, 93 Mo. 79.

"If upon a given state of facts negligence can be clearly asserted then the court may so declare; but, if reasonable minds may differ as to the conclusions to be drawn from the given facts, then the question of negligence must be determined from all the surrounding circumstances. The question of negligence then becomes one of mingled law and fact, and must be determined by the jury." *Barry v. Railroad*, 98 Mo. 62.

"If the facts are such that all reasonable men would be likely to draw from them the same inferences the question of negligence is one of law for the court; but, if they might differ as to the conclusion, the question is one of fact for the jury." Pierce on Railroads, p. 316.

These quotations from the authorities define as well as may be the limit upon the power of the court to declare when an act is negligent. Reasonable minds might well differ as to whether a railroad company was guilty of negligence in not having a watchman stationed at a particular crossing, because the stationing of watchmen at all crossings is not the common and usual means of warning adopted by prudent railroad companies; hence it was error for the court to declare as matter of law that the absence of such watchman was negligence as was held in *Welsch v. Railroad*, 72 Mo. 451. But it is not possible that reasonable minds could come to any other conclusion than that the failure of those having

in charge a passenger train, running through a populous country, at the rate of twenty-five miles an hour, approaching a crossing near the suburbs of a city, in the night time, on a dark night, to have the headlight of the engine lighted and burning was an act of negligence. This is a common and necessary means adopted by all railroad companies for the protection alike of those rightfully on the train, and on the track, or approaching it in the night time. No engine is constructed without such a light, and no train is run in the night time by any railroad company under any ordinary circumstances without having it lighted. This is a fact known to all reasonable minds by common experience and the court committed no error in declaring that it was negligence if the defendant's servants failed to have such light lighted, and burning at the time of the collision. It is the duty of those approaching a railroad track at a public crossing in the night time to look that they may see an approaching train, and the corresponding duty is imposed upon the employes of the railroad company to have the light burning by means of which the approach of the train may be seen by those whose duty it is to look.

III. The last objection urged against the instructions is that the damages to be assessed are fixed by the court at the sum of $5,000. There was no error in this. By statute that sum is fixed as the damages to be given " whenever *any person* shall die from any injury resulting from or occasioned by the negligence, unskilfulness or criminal intent of any officer, agent, servant or employe whilst running, conducting or managing any locomotive, car or train of cars." R. S. 1879, sec. 2121. The negligence in this case was that of the employes of the defendant in failing to give the statutory signal or in failing to have the headlight lighted and burning; either was negligence of the employes " whilst running, conducting and managing the locomotive and train of cars, and in the application of this section it can make

The Chicago, M. & St. P. Ry. Co. v. Baker.

no difference whether the negligence resulting in death is a breach of statutory or common-law duty." *Crumpley v. Railroad*, 98 Mo. 34; *King v. Railroad*, 98 Mo. 235.

Finding none of the errors assigned well taken, the judgment is affirmed. All concur, except BARCLAY, J., not sitting.