EDWARD M. SEEDS v. THE AMERICAN BRIDGE COMPANY.

No. 13,492. (75 Pac. 480.)

SYLLABUS BY THE COURT.

1. SPECIAL FINDINGS—*Irregular Judgment Set Aside.* If the special findings are such as to require the entry of a judgment thereon, notwithstanding the general verdict, a judgment entered upon such general verdict is irregular and as such may be set aside at a subsequent term of court.

2. GENERAL VERDICT—*When Overthrown by Special Findings.* All the elements which go to make up a plaintiff's right of recovery are found in his favor by a general verdict for him. And

before special findings will avail to overthrow the general verdict they must have determined all those elements against his right of recovery.

3. MASTER AND SERVANT—*Assumption of Risk—Knowledge of Danger.* Before it can be said that an employee has assumed the risks of an employment, it must be shown that he knew, or had reasonable opportunity of knowing, what those risks were; that is, he must not only know or have reasonable opportunity of knowing the dangerous conditions, but he must know or have reasonable opportunity of knowing the danger growing out of those conditions.

Error from Atchison district court; W. T. BLAND, judge.   Opinion filed February 6, 1904.   Reversed.

*P. Hayes,* and *J. L. Berry,* for plaintiff in error.

*Warner, Dean, McLeod & Holden,* and *W. W. & W. F. Guthrie,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J. : The defendant in error was engaged in rebuilding its bridge across the Missouri river at Atchison, and in so doing was removing and replacing the ironwork composing it.   For that purpose it had erected a false work upon piles considerably wider than the bridge on either side.   A huge crane or "traveler," spanning the entire structure from side to side, movable lengthwise of the bridge upon rails on either side, was erected for the purpose of attaching a block and tackle with which to lift and adjust the iron beams as they were removed from their places.   The plaintiff was employed in and about this work, under a foreman.   The hoisting was done by a machine denominated a "nigger-head," run by an engine at a uniform rate of speed.   The custom in moving beams was for a workman to connect the tackle to them by making a hitch about the middle

of the beam and then upon signal to start the ''nigger-head,'' so as to wind up the cable and thus hoist the beam.

On the occasion in question, the workman whose duty it was to fasten the chain around a beam then being lifted left the place too soon, so that the chain became unfastened. The foreman, with some vigor and profanity, called upon the plaintiff to readjust the hitch, telling him not to be in so great a hurry to get away, but to stay until he was certain that the hitch would remain fastened ; that he, the foreman, would tell plaintiff when to get away. The plaintiff made the hitch, and gave the signal to the foreman when he was ready to have the load hoisted, and the foreman directed the starting of the engine for that purpose. The ropes from the top of the traveler, which was about fifty feet above, were not perpendicular, so that as the beam started it was swung to one side. The plaintiff, having remained too long at the place of hitching, was unable to get to a place of safety in time to avoid the swinging motion of the beam ; there being no snub-line attached by means of which other workmen might control its motion. The beam, thus left to itself, swung against the loose plank on which the plaintiff was endeavoring to reach a place of safety, knocked it from under him, and he was precipitated to the ice on the river below and badly injured.

It was for the recovery of injuries thus sustained that plaintiff brought this action. The jury returned a general verdict in his favor, accompanied by many special findings. The defendant filed its motion for judgment upon the special findings, notwithstanding the general verdict, and also its motion for a new trial. The motion for judgment on the special findings was overruled, and the hearing upon the motion for a new

trial was continued until some subsequent date, to be determined by the court. At the next term of court the defendant filed its motion to vacate the judgment and for leave to renew its motion for judgment upon the special findings. This motion was sustained, the judgment on the general verdict set aside, the second motion for judgment upon the special findings granted, and judgment rendered in favor of the defendant for its costs.

It is complained that the court was in error (1) in setting aside the judgment rendered upon the general verdict after the expiration of the term at which it was rendered, it having no jurisdiction so to do; and (2) if the court had jurisdiction to make such order at the time it did, that the special findings were not so inconsistent with the general verdict as to require this to be done. If the special findings were so inconsistent with the general verdict that both could not stand together, then the court erred in overruling the motion in the first instance, and the judgment entered at that time was certainly irregular and as such might be vacated at or after the term at which·it was rendered, under section 5054, General Statutes of 1901. A judgment must follow the verdict. Any other course would be irregular. The controlling verdict is the one indicated by the special findings. It would be the court's duty to enter judgment upon the verdict, and to this end he might change the judgment at a subsequent term if incorrectly entered at first.. (*Tobie v. Comm'rs of Brown Co.*, 20 Kan. 14.) We are required, therefore, to make inquiry as to whether the special findings were such as to control the general verdict and compel a judgment to be entered for the defendant, notwithstanding the general verdict.

The negligence of the defendant, as found by the

jury, consisted in not using a snub-line to control the swinging motion of the load as it was raised, and in raising the load too fast. The jury further specially found that the plaintiff was in a position to see that there was no snub-line being used, and also in a position to see that the lifting line was out of perpendicular, and therefore that the beam was liable to swing as it was lifted from its position; that had the load gone straight up, instead of being dragged by reason of the fact that the lifting line was not perpendicular, the accident would not have happened, and that the plaintiff expected the load to be drawn straight up. It was further found that the gear which ran the "nigger-head" was such as to run it at a uniform rate of speed determined by the speed of the engine, from which fact it is claimed that the finding of negligence in that the load was raised too fast could not be true, or, in any event, that the plaintiff was aware of the rate of speed at which the load would be lifted.

From these facts the defendant deduces the conclusion that, as the plaintiff was in a position to know from the slant of the lifting-tackle that the beam would likely be drawn to one side, and was in a position, had he looked, to have known that there was no snub-line with which to control the motion of the beam •which was being lifted, and because he knew the speed at which the "nigger-head" was being run, and consequently the rate at which the beam would be lifted after he gave the signal to start, he assumed all of the risks in the lifting of the beam in that particular manner, and that therefore he was not entitled to recover.

We think that one important element is omitted from the defendant's chain of reasoning. It is not only necessary that an employee should know of the facts which go to make up the negligence of the em-

ployer, or have opportunity to know the same, but in addition to those facts he must have known or understood, or by the use of ordinary observation ought to have known or understood, the danger to which he was exposing himself; that is, not only must he have known or had reasonable opportunity to know the dangerous conditions existing, but he must have known or had reasonable opportunity to know the danger to which he was exposing himself by reason of those conditions. (*Railway Co. v. Bancord*, 66 Kan. 81, 71 Pac. 253.)

The last element of the equation is as much a matter of fact for the jury as is the former, and in determining it the jury must take into consideration all of the circumstances and surroundings. It might here be claimed that plainly the plaintiff should have grasped these details of danger and correctly deduced therefrom the proper estimate of the risks incident thereto. We must, however, remember that this would depend not a little upon the capacity, age and condition of the plaintiff, concerning which there is no special finding. We must further remember that he had just been hurried to the work, had been violently chided for too great haste in getting away from this place of danger, had been told to remain there until sure that the fastening was secure, and had been informed by the foreman that he would tell the plaintiff when to get away. All this would have a strong tendency to make the plaintiff less observant of the dangerous surroundings, less critical as to unsafe conditions, and less competent to judge of the danger to which he was exposing himself, growing out of these surroundings and conditions.

Now, while some of the elements of the problem involved were determined in favor of the defendant, by

the special findings, not all of them were so determined. The others, by the general verdict, were resolved in favor of the plaintiff, and hence there is not enough in the special findings to require the overthrow of the general verdict. The court, therefore, was in error in setting it aside. Its judgment in so doing and in rendering judgment for the defendant for its costs must be reversed, and the case remanded for further proceedings.

All the Justices concurring.