[No. 23392.  Department Two.  January 6, 1932.]

ALBERT B. COLBURN, *Respondent*, v. GREAT NORTHERN
RAILWAY COMPANY *et al., Appellants.*

IVAR HOLLUM, *Respondent*, v. GREAT NORTHERN RAIL-
WAY COMPANY *et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 635.

*Thomas Balmer, Edwin C. Matthias,* and *Charles S. Albert,* for appellant Great Northern Railway Company.

*A. J. Clynch,* for appellant Lewis Noble.

*Chas. W. Johnson* and *Walter H. Hodge,* for respondents.

MILLARD, J.—A fire engine, or pumper, of the city of Seattle collided with a train (a locomotive and eight cars) of the Great Northern Railway Company, at the intersection of Wall street and the railway company's track, in the city of Seattle. Albert B. Colburn, driver of the fire engine, and Ivar Hollum, a fire department lieutenant in charge of the fire engine, brought separate actions (which were consolidated for trial and appeal) against the railway company and the engineer of the locomotive to recover for personal injuries sustained as a result of the collision. The acts of negligence alleged to have caused the collision were operation of the train at an illegal rate of speed, failure to yield the right of way to the fire engine, failure to sound a proper warning of the approaching of the train to the crossing, and operation of the locomotive without a sufficient headlight.

The trial of the causes to a jury resulted in verdicts against the defendants for ten thousand dollars in favor of Colburn and for one thousand dollars in favor

of Hollum. From the judgments entered on the verdicts, motions for judgment notwithstanding the verdicts and for a new trial having been overruled, the defendants appealed.

The argument of counsel for appellants under the first five of the forty-nine assignments of error is that the negligence of respondent Colburn, the driver of the fire engine, contributed to his injury to such a degree as to require the court to hold, as a matter of law, that it barred his right to a recovery; and that, since the two respondents were engaged in a joint and common enterprise, the negligence of either respondent bars recovery by either or both.

A court will determine the question of contributory negligence, which is ordinarily a question for the jury, only when but one reasonable conclusion can be reached from a given state of facts. *Lawe v. Seattle,* 163 Wash. 362, 1 P. (2d) 237.

In the case at bar, it is obvious that the facts, which are summarized as follows, required the submitting to the jury of the question of contributory negligence.

The course of Railroad avenue, which lies between the water front and the business district of the city of Seattle, is northerly and southerly. On that avenue, at its intersection with Wall street (which runs east and west), are four railroad tracks. The east track is designated "N. P. Industry Track." The next track to the west is termed "N. P. Main Track." The third track, or the one on which the accident happened, is the "G. N. Northbound Track." The fourth, or west track, is the "G. N. Southbound Track." In the order named are the following avenues east of and parallel with Railroad avenue: Elliott, Western, First, Second, Third and Fourth.

In response to an alarm about eleven-ten p. m., Feb-

ruary 7, 1930, a fire engine proceeded from its station located at the corner of Battery street (which is approximately three hundred feet south of and parallel with Wall street) and Fourth avenue. That engine was operated by Colburn, who sat on the left side of the front seat. Hollum rode upon the rear footboard of the engine. The fire engine traveled westward on Battery street from Fourth avenue to Elliott avenue; thence north on Elliott avenue, the first avenue east of and paralleling the railroad tracks on Railroad avenue, to Wall street; thence west on Wall street to the third or northbound track of appellant railway company, where the collision with the train occurred.

The railway train was then traveling at a speed of not less than fifteen nor more than twenty-five miles an hour. The maximum speed permitted by city ordinance is six miles an hour. The fire engine was proceeding across the tracks at the rate of four to eight miles an hour. A box car was on the east or first track sixteen feet south of the Wall street south curb line extended. On account of this obstruction, trains were not visible to one proceeding west on Wall street until the trains entered the intersection of the tracks with Wall street. Upon arriving at the east rail of the first track, a train would be visible to the operator of a fire engine one hundred and fifty-five feet south of the center line of Wall street.

Colburn testified that he looked for trains at the intersection; that, while on Wall street prior to driving upon the tracks, he looked to the north and did not see any trains; that, when he arrived at the intersection of the center line of Wall street with the first track, he looked to the south. The fire engine was then twenty-four feet east of the point on the third or northbound track where the collision occurred, and could have been

stopped within a distance of four or five feet. Colburn then saw what "looked like a switch engine standing still down on the track and had a dim headlight on it." He did not realize the train was moving until he was on the third or northbound track, when respondent Hollum called Colburn's attention to the train, which was then almost at the point of the collision. The locomotive struck the rear left-hand side of the fire engine and carried it a distance of thirty or forty feet.

There was testimony that the train was operated, as by the respondent alleged, at an illegal rate of speed. So, too, there was testimony that the appellants had an opportunity to yield, or could have yielded, had the required degree of care been exercised, the right of way (as required by the city ordinance) to the fire engine. The testimony was conflicting on the question of whether any warning was given—the ringing of the locomotive's bell or the sounding of the whistle—of the approach of the train.

There is testimony, also, that the locomotive was operated without a sufficient headlight. It is not disputed that the locomotive was equipped with a proper headlight. The gist of the allegation is, which allegation is supported by competent evidence, that the headlight was set in a dim position, hence an insufficient light.

The acts of respondents were not, as appellants contend, so palpably negligent that there can be no two opinions concerning them. When Colburn was at a point twenty-four feet east of the place of the collision, he looked to the south, the direction from whence the train was coming. Had Colburn not then been led to believe, as he testified, and as the jury's verdict indicated it found, by reason of the dim headlight on the locomotive and the failure to ring the bell or sound the

whistle, that the locomotive was a motionless switch engine one hundred and fifty-five feet distant, the fire engine would have been halted on the first track to permit the train to proceed on the northbound track.

When Colburn saw the locomotive, the fire engine was proceeding slowly, and the firemen thereon were watching for approaching trains. If at that time the train were traveling at the rate of twenty miles an hour, it would arrive at the point of collision with the fire engine within five and one-third seconds. The fire engine, traveling twenty-four feet at the rate of eight miles an hour, would arrive at the same point within approximately two seconds. The engineer in his cab on the locomotive was in such a position that, at a distance of five hundred feet from where the fire engine entered the intersection, the engineer could have seen, had he looked, the fire engine within time to yield the right of way, or he could have warned those desiring to cross the tracks that a train was approaching.

It was for the jury to determine the question of illegal speed of the train, failure to yield the right of way to the fire engine, failure to sound a proper warning of the approach of the train, the sufficiency of the headlight, and whether the respondents exercised the degree of care required of them.

Counsel for appellants argue that, while a fire engine has the right of way going to, on duty at, or returning from fires, the driver of a fire engine must proceed with due regard to the safety of the public. Whether the fire engine was so operated, and the other questions of fact (negligence of appellants and contributory negligence of respondents), were for the jury to determine. Those questions are foreclosed, all having been by the jury under proper instructions resolved in favor of the respondents.

Appellants complain of fifteen of the instructions given to the jury and assign as error the refusal of the court to give twenty-six requested instructions.

The court charged the jury that it was the duty of the railway company to have its engine at the time in question equipped with a proper and sufficient headlight,

" . . . and if you find from a fair preponderance of the evidence that said engine was being operated at said time without a proper and sufficient headlight, then that would be negligence; and if you further find from a fair preponderance of the evidence that such negligence was the proximate cause of injury and damage to either of said plaintiffs, then the defendants would be liable for such injury and damage."

Counsel for appellants argue that the foregoing instruction was erroneous, as

"No evidence whatever was introduced by the plaintiffs that any duty rested upon Noble (appellant engineer) to provide a sufficient headlight. Nothing was shown as to any type, style or character of headlight required by rule or regulation or custom, or any failure to comply therewith. There was evidence of one witness that there wasn't any headlight burning and of others that it was dim and not burning like others running in the country. The evidence showed that the headlight complied completely with the Federal and company rules."

The instruction that it was the duty of the railway company to have its engine equipped with a proper and sufficient headlight, is a correct statement of the law. By interstate commerce commission order, made pursuant to Congressional enactment, each locomotive engaged in interstate commerce is required, while used in road service between sunset and sunrise (as in the case at bar), to be equipped with a headlight which shall afford sufficient illumination to enable a person

in the cab of such locomotive to see objects under certain conditions at a specified distance ahead and in front of such light. The order of the commission does not relate solely to the installation of a headlight conforming to certain specifications as to the size of the globe, the watt power, etc., of the headlight. *Calvin v. Schaff*, 118 Kan. 196, 234 Pac. 1006.

" . . . a common and necessary means adopted by all railroad companies for the protection alike of those rightfully on the train, and on the track, or approaching it in the night time. No engine is constructed without such a light, and no train is run in the night time by any railroad company under any ordinary circumstances without having it lighted. This is a fact known to all reasonable minds by common experience and the court committed no error in declaring that it was negligence if the defendant's servants failed to have such light lighted, and burning at the time of the collision." *Becke v. Mo. Pac. Ry. Co.*, 102 Mo. 544, 552, 13 S. W. 1053, 1055, 9 L. R. A. 157.

No one of average intelligence could mistake what the court meant. Viewing the instruction as a whole, no reasonable inference can be drawn therefrom that there is any question as to the installation of the kind of headlight required, or that same was not inspected. The jury were told that it was the duty of the railway company to see that its locomotive while used at night adequately lighted or illuminated the track ahead of such locomotive; that, in view of the duty imposed upon the railway company, if the locomotive were operated at night without adequate light or illumination in front of such locomotive, and such failure to light or illuminate was the proximate cause of injury, then the engineer in charge of that locomotive and the railway company, the engineer's master, would be liable for the injury.

The question is not whether the locomotive was

equipped with the regulation headlight, consisting of a globe and certain other parts, and no such question was presented to the jury. The question was (and the court properly charged the jury on that question) whether the locomotive was being operated at night (when light was necessary and by law required) without a proper and sufficient (adequate for the purpose) headlight; and if the jury found that the locomotive was operated at night without the light or illumination in front of it as required by law, whether that was the proximate cause of the injury to the respondents.

Was the light so inadequate as to deceive respondents, as they claimed? There is testimony that the light was dim, that the inadequacy of illumination ahead of the locomotive caused the respondents to believe the locomotive was standing still and that they could safely cross the tracks. If that be true (the jury's verdict forecloses the question), there was not a sufficiency of headlight or light ahead of the locomotive; that is, the "engine was being operated at said time without a proper and sufficient headlight." The operation of a locomotive at night without any light, or without the sufficiency of illumination produced by the headlight the law requires, would be the operation of a locomotive without a proper and sufficient headlight.

The instruction given as to the measure of damages is not incorrect. While loss of wages was not pleaded, and at the time of the trial Colburn was receiving from the fire department fund a pension equal to one-half of his former salary, evidence of the amount of his salary at the time he was injured was admissible, otherwise there would be no standard for the awarding of damages under the head of general damages for impairment of earning capacity. The court did not instruct the jury that Colburn could be awarded anything for loss of wages, but correctly instructed the jury

that, if their verdict was for Colburn, in arriving at the amount they could consider the impairment, if any, of earning capacity. The trial court in its memorandum decision clearly and concisely met this contention as follows:

"Loss of wages is a special damage and must be specifically alleged, but in my opinion the impairment of earning capacity comes under the head of general damages; and of course the jury, in order to award damages for impairment of earning capacity, must know what the plaintiff's earning capacity was at the time the injuries were sustained."

The instructions given fully stated the legal questions involved, and carefully guarded all the rights of appellants. No error was committed in refusing to give the requested instructions. Some of the instructions requested are substantially similar to those given. The other instructions requested are in part erroneous and in part could have been properly given. It is not error to refuse a requested instruction which is in part bad, although parts of such instruction could be properly given.

Appellants next complain that the damages awarded are excessive. It is sufficient to say that if the medical and lay testimony on behalf of respondents is to be believed—the verdicts reflect the acceptance by the jury of that testimony as true—the verdicts should not be disturbed.

Finally, appellants complain of misconduct of counsel for respondents in cross-examining a witness and in addressing the jury. Each time an objection was made to claimed misconduct of counsel, it was sustained, and the trial court properly instructed the jury concerning it. The evidence amply sustains the verdicts returned, hence it cannot be successfully

210

urged that there was misconduct of counsel which was reflected in excessive verdicts.

A careful examination of the record not disclosing reversible error, the judgments are affirmed.

TOLMAN, C. J., HOLCOMB, and MAIN, JJ., concur.

BEALS, J., concurs in the result.