No. 34,138

Perle Godfrey, *Appellee*, v. Kansas City Public Service Company, *Appellant*.

(88 P. 2d 1037)

 Opinion filed April 8, 1939.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany, Thomas M. Van Cleave, Jr.,* all of Kansas City, and *Charles L. Carr*, of Kansas City Mo., for the appellant.

*Blake A. Williamson, James K. Cubbison* and *Lee Vaughan, Jr.,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiff, a Kansas City fireman, brought this action for damages for injuries sustained when defendant's streetcar collided with a fire truck in which he was riding.

Plaintiff alleged that the collision was caused by the negligent operation of the streetcar, and that his injuries were occasioned thereby.

Defendant's answer contained a general denial, a plea of contributory negligence, and an allegation that plaintiff's injuries were caused by the negligence of the driver of the fire truck. At the trial defendant was permitted to amend its answer by a specific denial of its motorman's negligence, and a plea that the accident was unavoidable.

Plaintiff's evidence tended to show facts as follows:

Armstrong street in Kansas City runs from west to east. Third street runs north and south and crosses Armstrong at right angles. Armstrong does not extend farther east than Third street. On the latter street defendant has a double-track railway.

About 11 o'clock in the forenoon of January 27, 1937, a fire broke out at some point northeast of Third and Armstrong streets. A city fire truck answered the call. It was manned by its driver and the captain of the truck who rode in front, and by plaintiff and another fireman who stood on a footboard at the rear, where there was a handhold to steady them.

The fire truck came from the west on Armstrong. It turned toward the north on Third street, but before it got clear of the streetcar tracks one of defendant's streetcars coming from the north struck the left rear wheel of the truck, causing it to make a half circle and to come to a standstill, headed towards the west. The collision caused plaintiff to lose his hold and he was catapulted through the air and fell on his head against a parked automobile.

The width of the streets, the distance at which the occupants of the truck could have seen the streetcar, the distance at which the motorman of the streetcar should have seen and heard the sirens of the fire truck, the relative speeds of truck and streetcar, the condition of the streets in respect to ice and snow, and other evidentiary details were elicited at length by the evidence.

The particularly damaging evidence against defendant was the testimony of four eyewitnesses, which was to the effect that as the

streetcar came from the north on a gentle decline towards the intersection of Third and Armstrong streets, the motorman had his attention centered on something which caused him to stoop over and look down inside the streetcar, and which took his eyes off the track ahead of him. One of those witnesses testified that he was standing at a window facing the intersection and heard the fire siren. He looked up and saw the fire truck a half a block away, and also saw the streetcar 150 feet away—both vehicles coming toward the intersection. He testified that the motorman's head, before the collision, was down as the car approached "[I] did not see the motorman do anything with reference to looking up or slackening the speed of the car."

The testimony of the driver of the fire truck and the other fireman who rode by plaintiff's side at the rear of the truck was to the same effect. A woman passenger on the streetcar testified that she heard the siren more than a block away. As the streetcar approached the point of collision, "the operator was working with his transfers." She yelled, "Why don't you stop!" "The operator didn't seem to stop at all before the collision." This testimony was controverted, but the credence to be accorded it was for the jury to decide.

A verdict for plaintiff in the sum of $3,130 was returned by the jury, which also answered a number of special questions, one of which read:

"(4) If you find a verdict in plaintiff's favor, state each act of negligence of which you find the defendant's operator guilty. A. Not paying attention to duty."

The jury's other special findings mostly related to the estimated speeds and distances of the streetcar and fire truck as they were seen approaching the point of collision.

The usual post-trial motions were filed, argued and overruled, and judgment for plaintiff was entered on the verdict.

Defendant appeals, urging several grounds of error, the first of which is that defendant was entitled to judgment on the jury's single finding of negligence, which in effect was an acquittal of defendant of all other acts of negligence, and that the jury's special finding that defendant's negligence was that the motorman was "not paying attention to duty" was merely a conclusion. Certainly it was a conclusion—a conclusion of fact which is the ultimate and essential matter the special questions to the jury are designed to elicit. (G. S. 1935, 60-2918.) This special finding of negligence was merely a

summary of the specific charges of negligence alleged in plaintiff's petition—failure to see the fire truck, to use the brakes, to have the streetcar under control, and to hear or heed the siren of the fire truck. And since there was evidence to support each of those specific charges of negligence, and defendant did not ask that the finding be made more specific, we think it can neither be ignored nor minimized. (*Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511.)

It is next urged that the jury's answers to special questions were inconsistent with each other and with the general verdict, and that judgment should not be based thereon. No inconsistency is apparent in the answers to the special questions. The contention that they were inconsistent is an argumentative one—that the special findings in respect to the location of the fire truck 10 feet west of the property line on Third street when the streetcar was 70 feet north of the property line on Armstrong, and the finding that the point of collision was 10 to 15 feet south of the north property line, and the rates of speed of the advancing vehicles—that all these findings critically considered together—rendered it impossible that the collision could have occurred at all! The cleverness of this line of argument cannot be gainsaid. But as in *Bateman v. Franklin*, 114 Kan. 183, 185, 217 Pac. 318, we can only remark:

"The study and practice of the law call for clear thinking and logical reasoning; but it is possible to reason and refine with such subtlety and acuteness that the arrow of justice overshoots the mark altogether."

The testimony concerning speeds and distances was merely estimates of the various witnesses, and of course their testimony did not harmonize, and the jury's findings thereon cannot be required to accord with mathematical precision.

Modern judicial authority holds that the opinions of nonexpert witnesses touching matters of time, speed and distance are competent and admissible, even if those opinions have little probative weight. (*Himmelwright v. Baker*, 82 Kan. 569, 109 Pac. 178; *Creedon v. Galvin*, 226 Mass. 140, 115 N. E. 307; *Perkins v. Chicago, M. & St. P. Ry. Co.*, 158 Minn. 184, 197 N. W. 758; *Owens v. Kansas City, C. C. & S. J. Ry. Co.*, [Mo. App. 1920] 225 S. W. 234; *Larson v. Long*, 74 Colo. 152, 219 Pac. 1066; Lawson on Expert and Opinion Evidence, 2d ed., 505.) And since such is the prevailing rule, a contrariety of such opinion evidence is almost bound to appear in any sharply contested litigation, and the problem of sifting

the false from the true, in respect to the estimates of witnesses relating to matters of time, speed and distance, is merely a jury question. Thus in *Luttenton v. Detroit, Etc., Ry. Co.*, 209 Mich. 20, 176 N. W. 558, which was an action arising out of a collision between an interurban railway car and a passenger automobile, the competency of certain testimony touching the speed of the interurban car was challenged. The court said:

"Complaint is made that Frank Luttenton was permitted to testify to the speed at which the car was running without any showing of such knowledge or experience as would enable him to form a judgment thereon. . . . on cross-examination he said that it was a 'mere guess' on his part. . . . While the judgment of observers as to the speed of passing objects may greatly differ, we do not think it should be said as a matter of law that only experts who have timed them as they pass by can express an opinion as to the rate of speed at which they are moving. It is not a matter of expert knowledge, but of observation by one possessing some mental standard as to time and distance. The weight that should be given to such testimony is for the jury to determine after the witness has been fully interrogated as to that upon which his judgment is based and his opportunity for forming one." (p. 28.)

In *Traction Co. v. Beebe, Admr.*, 3 Ohio App. 213, it was said:

"While an ordinary person may not be at all accurate in giving in figures the speed of a car or train at a given moment, yet his knowledge of speed may be sufficiently substantial to enable him to give testimony which will be an aid in determining whether, under all the circumstances of the case, the speed was excessive at the time of the accident." (Syl. ¶ 1.)

See, also, *W., B. & A. Ry. Co. v. Fingles*, 135 Md. 574, 109 Atl. 431.

In the instant case, where the jury's findings of speed, distance and location of the point of collision were all based on mere opinion estimates of nonexpert witnesses, we could not permit them to overthrow the important special finding No. 4, nor to vitiate the general verdict. (*Morrow v. Bonebrake*, 84 Kan. 724, 115 Pac. 585; *Calvin v. Schaff, Receiver*, 118 Kan. 196, 234 Pac. 1006; *Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155; *Curry v. Wichita Railroad & Light Co.*, 128 Kan. 537, 278 Pac. 749; *Jordan v. Austin Securities Co.*, 142 Kan. 631, 51 P. 2d 38; *Billings v. City of Wichita*, 144 Kan. 742, 746, 62 P. 2d 869.)

Another error is based on the ground of newly discovered evidence, which developed at the trial thus:

At the hearing of defendant's motion for a new trial the matter of excessive verdict was urged on the trial court's attention. In

commenting on that point the trial judge remarked that plaintiff, who was 40 years old, looked like a man of sixty. The court said:

"But the man, I think—he was forty years old, wasn't he?

"[Counsel for defendant]: Yes.

"The Court: Well, he looked to me like he was about sixty. That is the way he looked to me. His appearance was not that of a rugged, healthy man; and I think the jury took that into consideration. I know I would, if I was trying the facts in this case. And I am taking it into consideration right now. The man did not look as if he was a well man, right now. And I believe the man has suffered as he says he has suffered, and he is still suffering. Something is gnawing on him. I am inclined to think, he has something there that is going to stay with him for a good long time, and maybe for life."

This remark about plaintiff's appearance being that of a man 60 years old prompted counsel for defendant to ask for time to make a showing of newly discovered evidence which was to the effect that plaintiff was suffering from a goiter, and that he was only waiting the recovery of a judgment against defendant to provide funds to have a hospital operation for its removal. The trial court gave defendant time to make that showing, but eventually it was made to appear that defendant's claim agent did know about the goiter before the trial, and the further fact was made to appear that the goiter was of a character which anybody could see, and its existence, although unknown or unobserved by defendant's counsel, could not be regarded as newly discovered evidence, nor did it compel an order for a remittitur on account of excessive verdict.

Yet another error is urged, on the trial court's refusal to instruct the jury that no particular significance should be attached to the fact that defendant's witnesses met before the trial in the law offices of defendant's counsel and discussed what each of them knew about the case and what their testimony would be. If that matter was unduly harped on at the trial, and a probability appeared that the jury might be swerved thereby from its proper objective of determining the issuable and ultimate facts upon which their verdict should rest, the requested instruction might properly have been given. But the record does not reveal that this inconsequential incident was unduly stressed by plaintiff's counsel, consequently we cannot say it was reversible error not to give the requested instruction.

A painstaking study of the record reveals no prejudicial error, and the judgment is therefore affirmed.